UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TORRENCE BATES,

    Petitioner,

v.                                                        Case No. 8:17-cv-1695-VMC-MRM

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

This matter is before the Court on remand from the United States Court of Appeals for the Eleventh Circuit. On August 31, 2017, this Court dismissed as untimely Torrence Bates's petition for habeas corpus relief under 28 U.S.C. § 2254. (Docs. 6, 7.) Bates appealed. The Eleventh Circuit reversed, holding that Bates "timely filed his petition in federal court" based on circuit precedent issued while the appeal was pending. *Bates v. Sec'y, Dep't of Corr.*, 964 F.3d 1326, 1328 (11th Cir. 2020).

On remand, the Court directed Respondent to file a response to the petition and to "show cause why the relief sought should not be granted." (Doc. 17.) Respondent filed a response. (Doc. 19.) Although the Court permitted Bates to submit a reply, he has not done so.

1

The petition raises a single ground for relief—that Bates's *Miranda*[1] rights were violated during his interview with law enforcement. (Doc. 1, p. 13.) Because this claim is unexhausted and procedurally defaulted, the Court **DENIES** the petition.

I.  **Background**

In December 2011, Bates was charged with second-degree murder.[2] (Doc. 20-2, Ex. 1, p. 1.) The victim, Jose Godineaux, was shot and killed inside his apartment. At trial, the prosecution argued that Bates walked into the apartment with a gun in his hand, forced his way into the bedroom, and "immediately start[ed] shooting at" Godineaux. (*Id.*, Trial Tr., p. 473.) The jury ultimately convicted Bates of the lesser-included offense of manslaughter with a firearm, and the trial court sentenced him to thirty years in prison. (*Id.*, Ex. 1, pp. 34, 86-90.)

At trial, the court considered the admissibility of Bates' post-*Miranda* statements to law enforcement. Bates's counsel informed the court that Bates had asked her to "look into" the "circumstances surrounding his ultimate jailhouse statement that he gave to law enforcement." (*Id.*, Trial Tr., p. 140.) According to counsel, Bates had told her he felt "coerced" when he signed the *Miranda* waiver. (*Id.*, pp. 140-41.) Counsel indicated that she had listened to a recording of the interview and found "nothing that

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] Bates had previously been convicted of the same offense, but the conviction was vacated on appeal because of an erroneous jury instruction on "manslaughter by act." *Bates v. State*, 100 So. 3d 69, 69 (Fla. 2d DCA 2011).

2

would support a motion to suppress [the] confession." (*Id.*, p. 141.) The court then asked Bates a series of questions about the interview.

Following this colloquy, the court indicated its desire to avoid "a [Rule 3.]850 issue." (*Id.*, p. 151.) Accordingly, the court stated that, before allowing the jury to hear the contents of the interview, it would "determine based on the tape whether or not there is some level of coercion or a violation of a constitutional right." (*Id.*) The court listened to the recording and issued the following ruling:

> THE COURT: Mr. Bates, you've raised the issue of the voluntariness of your statement. And I think it's a fair comment after I've listened to the tape, I think probably six or seven times I've actually listened to it, and I've struggled to find a place in the tape itself where I would be able to agree with you that you said it was involuntary.
>
> The police read to you the *Miranda* rights. I'm sorry. Let me restate that. The police told you they wanted to read to you your *Miranda* rights, at which point you did initially state it specifically, I need a lawyer. I want to get a lawyer. The officer then responded by saying, all right, then I don't need to read you your rights. I don't need to talk to you. I don't need to ask you any questions. I don't need to say anything to you. If that's the way it is, that's the way it is. But I'll be back, you probably realize that.
>
> After about four seconds, and there's silence at that point, then after about four seconds you reinitiate your communication and you say, I don't know even know y'all came to talk to me [*sic*]. The detective then interrupts whatever else it is you're going to say after that and he says, well, you shut down so quick, what are we doing. You don't even know what we're here to talk about. And you want a lawyer. At which point there is some discussion.
>
> Then the detective says to you, it's up to you. If you want to talk to us, you know, you've got to waive your *Miranda* rights.
>
> There are some more irrelevant discussions, but it is again told that it's up to you. And then they explain to you that they read to you, you sign

the form. Then they explain to you that any time you don't want to talk to us anymore, you can shut down.

There's a pause. The pause this time around is about 16 seconds. There's nothing but silence. At what point [*sic*] you then say, quote, what y'all want to talk to me about. I want you to read me my rights.

So you reinitiate the communication again. The *Miranda* is read to you, at which point you say, well, I wish that I had a lawyer. The detective responds, you can have a lawyer if you want to, that's up to you. If you want to talk to a lawyer, I'm not going to ask you any questions. Then you respond, but I want to know why y'all here.

So again, they indicate to you that they want to—they are prepared to honor your request to give you counsel and not ask you any questions. And you again indicate that you really want to know why they're there to talk to you.

So then [the] detective changed the topic and he says, I'll tell you what, let's talk about DNA. They talk a little bit about DNA and what the DNA is about and the DNA comparison. And you say, y'all read me my rights. I want to know what y'all want to talk about.

The deputy says DNA comparison, to which you respond, that's all? Then the deputy says, well, there are more things that I want to talk about. There's some discussion about your bandage. They don't specifically ask you any questions about the bandage or how you got an injury, which means they're not interrogating you.

Then the detective mentions doing it the, quote, safe way, end of quote. Answer as many questions as you're comfortable with answering, is what they talk about, and stop whenever you want to stop or[,] otherwise, we can just leave.

Then you end up ultimately signing the consent for the swab and eventually you end up talking to them.

So as I've read—listened to the tape, under the totality of the circumstances I do not hear coercion. I do not hear any threats of any kind. I don't hear any kind of trickery.

I think in the end what I end up hearing is you are very concerned about why it is they're there to talk to you. They are not, at least, initially

> forthcoming as to exactly why they want to talk to you, but they also don't try to lie to you or mislead you.
>
> They don't say, well, we want to talk about one thing and then ultimately want to talk about another. They just don't tell you. And you're very interested in knowing what that is and you keep prodding to try and know what that is, even to the point of when they are prepared to honor your right to counsel reinitiating communications so that we start this whole process all over again.
>
> I'm unable to say at this time that you were in any way coerced under the totality of the circumstances into giving a statement, that you were lied to or mislead [*sic*], and that the statement was involuntary. So at this point the officer will be allowed to testify.

(*Id.*, pp. 341-45.)

Bates appealed his conviction. With the assistance of counsel, he submitted an initial brief that raised a single issue: whether the trial court erroneously instructed the jury on "justifiable use of deadly force for a manslaughter conviction." (*Id.*, Ex. 2, pp. 11-18.) Bates did not argue on appeal that his *Miranda* rights were violated during his interview with law enforcement. The state appellate court *per curiam* affirmed Bates's conviction. (*Id.*, Ex. 4.)

Bates then sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Ex. 6, pp. 1-56, 74-129, 135-43, 160-82, 310-21.) He raised several grounds for relief, including an ineffective-assistance-of-counsel claim based on his trial attorney's alleged failure to "bring to the court[']s attention the violation of [his] *Miranda* rights." (*Id.*, p. 140.) Bates did not, however, raise the underlying *Miranda* claim in his postconviction motions. The state court ultimately rejected

5

Bates's claims, and the state appellate court *per curiam* affirmed the denial of relief. (*Id.*, pp. 145-51, 186-94, 323-25, 494-97; *Id.*, Ex. 9.)

## II. <u>Standard of Review</u>

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates

6

prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

### III. Discussion

As noted above, Bates raises a single ground for relief in his petition—that his "rights under *Miranda* were violated during [his] interrogation." (Doc. 1, p. 13.) Bates claims that "law enforcement never gave [him] an opportunity to access his rights," that the interrogating officers "gave lip service and said the right thing for the record," and that "through delay and ignoring well[-]established law[,] [they] broke his resistance and will power to maintain his request for an attorney." (Doc. 1-1, p. 1.) Thus, according to Bates, the trial court "erred when it ruled that [his] rights and subsequent confession were not violated (admissible) when applying *Miranda* . . . to the facts of the case." (*Id.*, p. 9.)

Respondent is correct that Bates failed to exhaust this claim. To satisfy the exhaustion requirement, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," either on direct appeal or on collateral review. *Boerckel*, 526 U.S. at 845. At trial, Bates challenged the admissibility of his post-*Miranda* statements. On direct appeal, however, Bates did not argue that law enforcement violated his *Miranda* rights. Nor did he raise the *Miranda* claim in his state postconviction motions. Bates's failure to present his *Miranda* argument on direct

7

appeal or on collateral review renders the claim unexhausted. *See, e.g.*, *Crayton v. Sec'y, Dep't of Corr.*, No. 17-15290-C, 2019 WL 2374452, at *4 (11th Cir. May 15, 2019) (holding that *Miranda* claim was "not properly exhausted" because petitioner "did not raise th[e] claim in his direct appeal or in his state postconviction motions").

To be sure, Bates argued in his state postconviction motions that trial counsel was ineffective for failing to "bring to the court[']s attention the violation of [his] *Miranda* rights." (Doc. 20-2, Ex. 6, p. 140.) For purposes of exhaustion, however, a substantive claim is "separate and distinct" from an ineffective-assistance-of-counsel claim based on the substantive claim. *LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 n.24 (11th Cir. 2005); *see also Phillips v. Sec'y, Dep't of Corr.*, No. 8:21-cv-960-WFJ-SPF, 2022 WL 2829631, at *3 (M.D. Fla. July 20, 2022) ("[Petitioner's] assertion of an ineffective assistance of trial counsel claim for failing to move to suppress because officers exceeded the scope of consent and searched the home without a warrant was not sufficient to exhaust his substantive Fourth Amendment violation claim."). Accordingly, Bates's claim that trial counsel was ineffective for failing to seek suppression of his post-*Miranda* statements was insufficient to exhaust the underlying *Miranda* claim. *See Sherman v. Inch*, No. 5:17-cv-204-MCR-MJF, 2020 WL 4721295, at *14 (N.D. Fla. Jan. 24, 2020) (finding that, for exhaustion purposes, petitioner's "substantive challenge to the jury instructions [was] not the same as an ineffective

8

assistance of trial counsel claim based on counsel's failure to object to the instructions"), *adopted by* 2020 WL 4700765 (N.D. Fla. Aug. 13, 2020).[3]

Bates cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within thirty days of the rendition of a sentence). Nor can he raise it in another postconviction motion. *See* Fla. R. Crim. P. 3.850(b) (imposing two-year window of time to file motion for postconviction relief). As a result, the *Miranda* claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138 ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). Because Bates has not shown that an exception applies to overcome the default, the sole ground in the petition is barred from federal habeas review.[4]

---

[3] *See also Bailey v. Nagle*, 172 F.3d 1299, 1304 (11th Cir. 1999) ("An ineffective-assistance claim is analytically distinct from the substantive claim underlying it. Therefore, whether or not [petitioner] exhausted his ineffective-assistance claim regarding the voluntariness of his predicate convictions, his current substantive claim was not presented to the Alabama courts."); *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("[B]ringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because the two claims are analytically distinct.").

[4] Bates makes no attempt to overcome the default of his *Miranda* claim. But even if Bates had argued that appellate counsel's ineffective assistance was the cause of his failure to raise the *Miranda* claim on direct appeal, that would not excuse the default. "A showing of ineffective assistance of appellate counsel in failing to raise a claim on direct appeal can constitute 'cause' so long as the ineffective assistance occur[red] during a stage when a petitioner had a constitutional right to counsel, *and the ineffective-assistance claim itself is both exhausted and not procedurally defaulted.*" *Sealey v. Warden, Ga. Diagnostic Prison*, 954 F.3d 1338, 1365 (11th Cir. 2020) (emphasis added). Bates never argued in state court that his appellate counsel was ineffective for failing to raise the *Miranda* claim on direct appeal. Accordingly, any such ineffective-assistance claim "is procedurally defaulted and cannot be considered as cause for the default of his trial court error claim." *Dowling v. Sec'y for Dep't of Corr.*, 275 F. App'x 846, 847 (11th Cir. 2008).

It is therefore **ORDERED** that Bates's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Bates and to **CLOSE** this case.

### Certificate of Appealability and Leave to Appeal *In Forma Pauperis* Denied

It is further **ORDERED** that Bates is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a COA must first issue. *Id*. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To obtain a COA, Bates must show that reasonable jurists would find debatable both (1) the merits of the underlying claim and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Bates has not made the requisite showing. Finally, because Bates is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on April 7, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE